LENA L. RUSSELL *vs.* PHILIP LIBERMAN, *d. b. a.*
PHILIP LIBERMAN COMPANY.

MAY 7, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J.  This is an appeal by the respondent from a decree of the superior court granting petitioner's prayer for relief under the workmen's compensation act, general laws 1938, chapter 300.

The following facts are undisputed: Petitioner's husband, Henry R. Russell, was employed as a maintenance man in respondent's mill. He apparently was in good health until he was injured while working in that capacity on December 3, 1942. In the evening of that day, while carrying on his right shoulder a roller that weighed between forty and fifty pounds, he slipped on a wet spot on the floor, striking his left shoulder and side against the wall. He held onto the roller and in so doing he severely twisted or contorted his body. Although he continued to work for the remainder of that evening and the following day, under difficulty because of sharp pains in his left side, he was unable to work thereafter. From then on he was under medical treatment for a period of over a month. He died on January 11, 1943.

The real controversy in this case is as to causal connection between the accident and Russell's death. The medical testimony is therefore of vital importance. Russell was first attended by Dr. G. Hazard Rankin, a chiropractic physician, who testified that his first examination of Russell, who complained of pain in the region of the stomach and in his left side, revealed "traumatism with symptoms of neuritis involving the left shoulder and arm." When he was called a few days later, as Russell kept complaining of the same pains, he again examined him and found a tear in the intercostal muscles of the tenth, eleventh and twelfth ribs on the left side, with inflammation and congestion of the tissues. As he showed no improvement, Dr. Rankin, on December 19, notified the doctor of respondent's insurer and requested him to see the patient and, on December 24, stopped treating Russell and advised him to secure the attendance of a medical doctor.

Dr. Louis J. A. Legris, a medical doctor in general practice since 1915, was called on December 28, at which time Russell complained of "bad pain in the region of his stomach" and also told him "that he had encountered severe pain in his side, in his left side, after the accident." He continued in attendance until Russell's death. The cause of death was

given by Dr. Legris in the death certificate as "Acute Hepatitis", which he explained is an inflammation of the liver.

In response to a hypothetical question as to causal connection between the accident and the ailment that was given as the cause of death, Dr. Legris testified as follows: "My opinion is that the contortion of the body of Mr. Russell was severe enough to cause a congestion of the liver which eventually caused—eventually resulted in the development of this bile in the circulation, which finally caused his death." After a short discussion which is not material here, the doctor's testimony was as follows: "The Court: Well, I gather that it is your opinion that the contortion was severe enough to cause a liver condition, starting from the time of the contortion, is that what you mean? A. Yes, sir." Near the close of his direct examination we also find the following question and answer: "The Court: Well, doctor, do you attribute the congestion of the liver, which you say resulted in the development of the bile in the circulation, which finally caused his death, to any other cause than the contortion or twisting that we have been talking about? Witness: No, sir."

Doctor George B. Farrell and Dr. Halsey DeWolf testified for the respondent. Doctor Farrell examined Russell for respondent's insurer on December 19, 1942. He received from Russell substantially the same version of the accident and of treatment by Dr. Rankin as hereinbefore stated. Doctor Farrell testified that his examination revealed "an acute process of the chest" and that if Russell thereafter developed anything in the circulation "it was a secondary infection or a complication" from the acute process in his left chest. He then made a tentative diagnosis of pneumonia and acute pleurisy. His opinion was that the accident did not bring on the condition that caused Russell's death and that acute hepatitis is an infectious and not a traumatic disease. However, near the close of his examination he admitted that the liver can be affected by trauma, "If the trauma was severe enough", and, further, that if there was

a dormant liver condition, "less severe trauma might cause some liver condition."

Doctor DeWolf never saw Russell. His answer to a hpyo-thetical question as to causal connection was: "My opinion is that *probably* there was no connection between the accident on the third of December and the death of acute hepa-titis. . . . I believe that acute hepatitis is known to have an infectious origin and I do not see the connection between such an accident as you describe, as is described, and an acute infection." (italics ours)

In a careful review of all the evidence and especially of the conflicting medical testimony, the trial justice found that there was sufficient evidence to establish causal connec-tion between the accident and Russell's death. He therefore granted the petition and fixed the amount of compensation.

The respondent admits our well-established rule that, in the absence of fraud, findings of fact by a trial justice on conflicting evidence are conclusive on this court; in other words, this court is without power, where there is no fraud, to disturb the findings of fact by a trial justice if they are supported by any legal evidence. In such a case, the weight of the evidence or the credibility of the witnesses is not before us.

The respondent, however, contends that the rule just stated does not apply in this case, because it is an established medical fact, of which the court should take judicial notice, that acute hepatitis is an infectious and not a traumatic disease, and that therefore the employee's hepatitis in this case could not be attributed to the accident, thus leaving the finding of the trial justice on the question of causal connection unsupported by any legal evidence. He criticizes the decision of the trial justice in that he failed to "decide the conflict in the testimony of the physicians as to the etiology of acute hepatitis—whether it is, or is not, of infec-tious origin." The short answer to this criticism is that the trial justice did decide the conflict in the medical testimony before him on a medical fact. He was not obligated to go

further than that in order to determine the cause or causes of hepatitis.

The respondent in his brief also argues that the testimony of Dr. Legris is not supported by legal evidence as "it is contrary to universally accepted medical theory; that this Court may take judicial notice of the established medical fact that acute hepatitis is a non-traumatic disease of infectious origin; and that this is decisive of the case." In order to support this argument the respondent ignores the evidence in the present record and in substitution thereof he urges us to consult various medical works and dictionaries which, according to him, support his theory of the nature and cause of acute hepatitis. There may be rare instances where a court will take judicial notice in a limited way of some well-known and generally accepted medical fact, as, for example, when there is no conflict in the medical testimony as to its nature; but the present case is not one of those instances. In our judgment it is not reasonable to expect this court, by examining medical treatises that were not in evidence, to determine the cause or causes of acute hepatitis, and to substitute that information for the medical evidence that the trial justice adopted in making his decision.

There is nothing in the record before us that goes to the extent of supporting the conclusions of respondent's counsel that it is an "established medical fact that acute hepatitis is a non-traumatic disease of infectious origin" and that the opinion of Dr. Legris as to the cause of that disease in the circumstances of this case is "contrary to universally accepted medical theory." The mere fact that Dr. DeWolf and Dr. Farrell disagreed with Dr. Legris as to the ordinary cause of acute hepatitis does not establish either of these conclusions. Nor does the testimony of respondent's doctors eliminate the positive testimony of Dr. Legris that the congestion or inflammation of the liver, which he unqualifiedly attributed to the severe contortion of Russell's body in the accident, was the cause of bile entering the circulation and

ultimately causing death. In fact, Dr. Farrell's testimony, upon close examination, may be reasonably interpreted as lending some support to Dr. Legris's theory that congestion or inflammation of the liver could result from trauma and cause Russell's death.

The conflict in the testimony of Dr. DeWolf and Dr. Farrell on the one hand and that of Dr. Legris on the other is nothing more than a disagreement of medical opinions as to the cause of Russell's death and such a conflict is frequently met in compensation cases. Where a trial justice is confronted with conflicting medical opinions on the controlling question of causal connection, it is his duty to consider that testimony together with all other facts in evidence and reasonable inferences therefrom in order to decide such controlling question. *Enos* v. *Industrial Trust Co.*, 62 R. I. 263. The trial justice properly performed his duty in the instant case. The issue of causal connection having been thus determined by him on conflicting evidence, his finding of fact on that issue is conclusive on this court under the statute.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*William I. Matzner*, for petitioner.

*Henry M. Boss, Francis W. Conlan*, for respondent.